UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ANDRES SEBASTIAN VERA REVELO | CIVIL DOCKET NO. 6:22-CV-01419 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| GRISELD ANDREA CAÑIZALEZ CEDEÑO | MAGISTRATE JUDGE CAROL B. WHITEHURST |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is a VERIFIED PETITION (the "Petition") brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"). [Doc. 1]. Petitioner, Andres Sebastian Vera Revelo (hereinafter "Vera Revelo" or "Petitioner"), is the father of a four-year-old girl referred to herein as P.A.V.C.[1] Vera Revelo petitions this Court for the return of P.A.V.C. to Ecuador, asserting that in August of 2021, Respondent Griseld Andrea Cañizalez Cedeño (hereinafter "Cañizalez Cedeño" or "Respondent") wrongfully brought P.A.V.C. to the United States, where she currently remains. [*Id.*]. The matter was tried before this Court, sitting without a jury, on August 22, 2022, and September 1, 2022. Having considered the evidence admitted at trial, counsel's arguments, the record, and the applicable law, the Court hereby issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent that any finding of fact may be construed as a conclusion of law, the Court adopts it as such,

---

[1] The name of the child has been redacted from the public filings in this case pursuant to Federal Rule of Civil Procedure 5.2. The minor is referred to herein by her initials, P.A.V.C.

and to the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

## I. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Convention implemented by Congress through the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001, *et seq*. Venue is proper because P.A.V.C. was located in New Iberia, Louisiana, within this District, when Vera Revelo filed the Petition, and remains in the Western District of Louisiana subject to the jurisdiction of this Court. 22 U.S.C. § 9003(b) (a court "is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.")

## II. PROCEDURAL HISTORY

This controversy began when Cañizalez Cedeño and P.A.V.C. traveled to the United States and shortly thereafter notified Vera Revelo, that without Vera Revelo's consent, P.A.V.C. would be living in the United States with her. [Doc. 1, ¶ 14]. Vera Revelo promptly contacted Ecuadorian law enforcement, who referred him to Ecuador's Secretarìa de Derechos Humanos (the Secretariat for Human Rights). [*Id.*, ¶ 15 ]. Vera Revelo then filed an application for P.A.V.C.'s return to Ecuador with the Secretariat. [Trial Exhibit F]. The Ecuadorian Central Authority transmitted this application to the United States Department of State, which eventually located P.A.V.C. near Lafayette, Louisiana. [Doc. 1-8]. On September 29, 2021, the United States Department of State sent a letter to Cañizalez Cedeño notifying her that Vera

Revelo had filed a petition for P.A.V.C.'s return to Ecuador and requested that she agree to voluntarily return P.A.V.C. to Ecuador. [Doc. 1-8.]. Cañizalez Cedeño replied on October 5, 2021, stating that she would not voluntarily return P.A.V.C. to Ecuador. [Doc. 1, ¶ 20].

On May 26, 2022, Vera Revelo filed the Petition in this Court requesting that the Court: (1) prohibit the removal of P.A.V.C. from this Court's jurisdiction; (2) order that P.A.V.C. be returned to Ecuador; (3) order Cañizalez Cedeño and P.A.V.C. to come before the Court and show cause as to why the child should not be returned; and (4) order Cañizalez Cedeño to pay legal costs and fees and any costs related to the return of P.A.V.C. to Ecuador. [Doc. 1, pp. 15-16].

On June 2, 2022, Vera Revelo filed an APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR AN EXPEDITED EVIDENTIARY HEARING requesting the Court to issue a Temporary Restraining Order preventing Cañizalez Cedeño from bringing the minor child, P.A.V.C., outside the jurisdiction of the Western District of Louisiana. [Doc. 9]. The Court thereafter issued a Temporary Restraining Order prohibiting Cañizalez Cedeño from leaving this District and set an evidentiary hearing on Petitioner's request for preliminary injunction, at which Cañizalez Cedeño was ordered to attend with P.A.V.C. [Doc. 11]. The Court further ordered that the Temporary Restraining Order be served on Cañizalez Cedeño by the United States Marshals Service, after previous attempts to serve Petitioner were unsuccessful. [*Id.*]. A hearing was held on June 14, 2022. Vera Revelo's attorneys were present and he appeared via Zoom from Ecuador. [Doc. 19]. Cañizalez Cedeño

appeared in Court *pro se* with P.A.V.C. [*Id.*]. An interpreter was present in Court and facilitated communication between the Court and both Vera Revelo and Cañizalez Cedeño. [*Id.*]. During the hearing, Cañizalez Cedeño consented to the issuance of a preliminary injunction ordering, among other things: (i) that P.A.V.C. shall not be removed from the Western District of Louisiana, (ii) that Cañizalez Cedeño enable communication between Vera Revelo and P.A.V.C. at least twice a week, and (iii) that Cañizalez Cedeño surrender to the Court the passport and any travel documents of P.A.V.C. should they be returned to her possession. [*Id.*]. The Court further ordered the United States Department of Homeland Security and the United States Department of State to produce to the Court "any and all documents related to the immigration status, pending immigration proceedings, and immigration history – including "A Files" and prior removals, if any – of both Cañizalez Cedeño and her minor child, P.A.V.C. [Doc. 20, p. 5]. The United States Department of Homeland Security was further directed not to remove P.A.V.C. or Cañizalez Cedeño from the Western District of Louisiana without leave of court during the pendency of this case. [*Id.*]. The preliminary injunction was ordered to remain in effect until the Court's final resolution of this matter on the merits. [*Id.*, p. 1].

During the Court's colloquy with Cañizalez Cedeño at the preliminary injunction hearing, Cañizalez Cedeño indicated – at the Court's suggestion – that she would like to consult with an attorney regarding these proceedings. [Doc. 19]. Pursuant to 28 U.S.C. § 1915, and considering the consequential nature of this

4

proceeding, the Court appointed Dona K. Renegar and the law firm of Veazey Felder & Renegar, LLC as counsel for Cañizalez Cedeño. [Doc. 22]. On July 14, 2022, Cañizalez Cedeño filed an Answer to the Petition in which she raised the defense that Vera Revelo did not have a "right to custody" under the Convention because he was only granted rights of visitation. [Doc. 27, ¶ 50]. Further, Cañizalez Cedeño raised the defense that, if returned to Ecuador, P.A.V.C. would be exposed to a grave risk of harm in the form of severe psychological and/or physical harm. [Doc. 27, ¶ 51].

On August 5, 2022, the parties filed a Joint Statement of Ecuadorian law wherein the parties agreed that a "*ne exeat*" right of a parent to consent to their child leaving the country is a "right of custody" as defined by the Convention and that under Ecuadorian law both biological parents, regardless of the custodial arrangement, must consent before a Judge or Notary Public before their child may leave Ecuador. [Doc. 34]. The parties further agreed that Ecuadorian law proscribes one parent from keeping a child in a foreign country beyond the scope of the other parent's consent and that it is unlawful for one parent to impair the other parent's visitation rights. [*Id.*].

The Court held a trial on the Petition on August 22, 2022, and September 1, 2022. Vera Revelo appeared live via Zoom from Ecuador, with his counsel present in Court. Cañizalez Cedeño appeared in person with appointed counsel. The Court appointed David Hoover and Diana Gonzalez as Spanish-language interpreters to assist in the trial and all other ancillary proceedings held in this matter. [Docs. 39 and 40]. At trial, the Court took evidence from the parties, hearing the testimony of

5

Petitioner Vera Revelo and witnesses called by him, including his sister Christina Vera Revelo and his co-worker Katherine Izurieta. The Court also heard the testimony of Respondent Cañizalez Cedeño and witnesses called by her, including her mother Belkis Sigue, her former co-worker Enderson Castillo Álvarez, her daughter K.F., and her half-sister Melanie Molina. The Court also admitted documentary evidence and heard arguments of counsel. At the close of the hearing the Court informed the parties that the matter would be taken under advisement, and the Preliminary Injunction [Doc. 20] would remain in effect until the Court issued judgment.

### III. FINDINGS OF FACT

Vera Revelo, a citizen of the Republic of Ecuador, is 38 years old and works as an executive at an insurance company. Cañizalez Cedeño is a citizen of the Bolivarian Republic of Venezuela and is 32 years old. [Doc. 44]. Testimony revealed that Vera Revelo and Cañizalez Cedeño were never married but maintained a civil union from July 10, 2017, until they separated on August 29, 2019. Vera Revelo testified that the civil union ended because he and Respondent no longer maintained a positive relationship.

After Vera Revelo and Cañizalez Cedeño separated on August 29, 2019, they entered into a custody agreement which established custody rights in favor of Cañizalez Cedeño with open visitation rights in favor of Vera Revelo. [Trial Exhibit C]. Vera Revelo testified that after this agreement was established, P.A.V.C. would spend Monday through Friday with Cañizalez Cedeño and would spend from

6

Saturday afternoon until Sunday night with him. Vera Revelo testified that this arrangement changed starting in December of 2020 when Cañizalez Cedeño began traveling, at which point P.A.V.C. would spend all of her time with him. Vera Revelo testified that he would take care of P.A.V.C. at night and on the weekends, with his sister caring for P.A.V.C. during the day while he was at work. Vera Revelo also testified that he provided all of the necessary care for P.A.V.C during this time, including taking her to doctors' appointments and starting the enrollment process for P.A.V.C. to attend school.

In August of 2021, Vera Revelo consented, via a notarized agreement, for Cañizalez Cedeño to take P.A.V.C. to Cancùn, Mexico, for a family vacation from August 25, 2021, to September 2, 2021. [Trial Exhibit D]. Vera Revelo testified that he never gave Cañizalez Cedeño permission to take P.A.V.C. to the United States. He further testified that he did not hear from Cañizalez Cedeño from August 25, 2021, until August 31, 2021. Documentary evidence and the testimony of Cañizalez Cedeño demonstrate that on August 27, 2021, Cañizalez Cedeño and her daughters K.F. and P.A.V.C. crossed into the United States illegally through a "hole in the fence" near San Luis, Arizona. [Doc. 44, p. 6]. Shortly thereafter, they were encountered and arrested by United States Border Patrol and released the same day into the United States. [Doc. 44]. They subsequently traveled to New Iberia, Louisiana, and have been living there ever since. [Doc. 44]. Vera Revelo testified that on August 31, 2021, when he asked Cañizalez Cedeño when he would be able to pick up his daughter, she responded that both her and P.A.V.C.'s passports were lost and therefore instead of

returning to Ecuador, they would be going to the United States, where Cañizalez Cedeño's mother lived, and would request asylum.[2] [Trial Exhibit K]. Vera Revelo later learned that Cañizalez Cedeño had vacated her apartment in Ecuador and sold her furniture and possessions in preparation for her move to the United States. [Doc. 1, ¶ 16]. Cañizalez Cedeño testified that if P.A.V.C. is returned to Ecuador, she would not return with P.A.V.C., but would instead choose to remain in the United States.

P.A.V.C. was born in December of 2017 in Quito, Ecuador, and continuously lived in Ecuador until she was brought to the United States in August of 2021. [Doc. 1, ¶ 5 and Trial Exhibit B]. Since P.A.V.C. has been in the United States, Vera Revelo has maintained regular contact with her via WhatsApp Messenger and video calls. [Doc. 1, ¶ 17].

Cañizalez Cedeño testified to and called several family members and friends to substantiate isolated incidents of domestic altercations between Respondent and Petitioner. Respondent also presented testimonial evidence that Vera Revelo would occasionally drink too much on the weekends and while on vacation, sometimes causing him to act in aggressive, irresponsible, or dangerous ways, including driving while impaired. Respondent did not submit any documentary evidence of arrests or convictions of Petitioner, nor any police reports describing or substantiating in any of these alleged incidents.

---

[2] Respondent admitted in her testimony that the passports had not been lost, but instead were turned over to U.S. Border Patrol at the time she and her two children crossed the border into the United States.

## IV. CONCLUSIONS OF LAW

The Convention was adopted in 1980 and seeks "'to secure the prompt return of children wrongfully removed or retained in any Contracting State,'" and "'to ensure the rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Abbott v. Abbott*, 130 S.Ct. 1983, 1989 (2010) (quoting Convention, Article 1). The purpose of the Convention is to "'protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence.'" *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 244 (5th Cir. 2004) (quoting Convention, Preamble).

The Convention was ratified and implemented in the United States by the ICARA. *See*, 22 U.S.C. §§ 9001, *et seq*. The treaty was ratified between the United States and Ecuador on April 1, 1992. *See*, U.S. Hague Convention Treaty Partners, https://travel.state.gov/content/travel/en/International-Parental-Child Abduction/abductions/hague-abduction-country-list.html (last visited on August 18, 2022).

The ICARA recognizes that "international abduction or wrongful retention of children is harmful to their well-being," and "[p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention." 22 U.S.C. § 9001. The primary goals of the Convention are to "restore the pre-abduction status quo ... and deter parents from crossing borders in search of a more sympathetic court." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000). Therefore, the ICARA makes

clear that United States courts may only determine the rights provided under the Convention and cannot make any determinations as to the underlying child custody claims. 22 U.S.C. § 9001(b)(4).

Under ICARA, a person seeking return of a child allegedly wrongfully removed to or retained in the United States may file a civil action in either a state or federal district court in the place where the child is located at the time the petition is filed. *Id*. § 9003(a)-(b). An ICARA case is to be decided by a court, "in accordance with the Convention." *Id*. § 9003(d). ICARA specifies the burden of proof for each party, requiring that the petitioner "establish by a preponderance of the evidence ... that the child has been wrongfully removed or retained within the meaning of the Convention," and that a respondent opposing the return of the child assert by a "preponderance of the evidence" that an exception set forth in article 12 or 13 of the Convention applies, or by "clear and convincing evidence" that an exception set forth in article 13b or 20 – including a "grave risk of harm" – applies. *Id*. § 9003(e)(2).

### a. Vera Revelo's *Prima Facie* Case of Wrongful Removal

To prove that a child has been wrongfully removed or retained, the petitioner must prove by a preponderance of the evidence that: "(1) a parent takes or retains the child outside of [the child's] country of habitual residence, (2) the removal/retention breaches the custody rights of the non-removing parent under the laws of that country, and (3) the non-removing parent was exercising or attempting to exercise his custody rights at the time of the removal or retention, or would have exercised those rights but for the wrongful removal or retention." *Id*. § 9003(e); *Crossan v.*

10

*Clohessy*, 330 F. Supp. 3d 1098, 1102. If the petitioner meets this burden, the ICARA requires the prompt return of a child who is wrongfully removed or retained, "unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4).

### i. Removal of Child Outside Country of Habitual Residence

Although the Convention does not define "habitual residence," the Supreme Court has held that "[t]he place where the child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Monasky v. Taglieri*, 140 S. Ct. 719, 726 (2020). Further, the Court noted that "[c]ommon sense suggests that some cases will be straightforward: Where a child has lived in one place with family indefinitely, that place is likely to be [her] habitual residence." *Id*. at 727. The objective a court should have in mind when determining a child's habitual residence is "to ensure that custody [will be] adjudicated in what is presumptively the most appropriate forum – the county where the child is at home." *Id*.

In this case, determining P.A.V.C.'s place of habitual residence is straightforward. P.A.V.C. was born in Ecuador and had lived there her entire life until Cañizalez Cedeño removed her to the United States in August of 2021 without Vera Revelo's consent. [Doc. 1, ¶ 5]. Vera Revelo and his sister also testified that P.A.V.C. had a caring extended family in Ecuador, she spent time with friends her age, and she was soon to be enrolled in school in Ecuador. By removing P.A.V.C. to the United States, Cañizalez Cedeño took P.A.V.C. away from her habitual residence.

### ii.  Removal Violated Petitioner's Rights of Custody

The Convention provides that rights of custody are "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence."  Convention, Article 5(a).  Additionally, the Convention acknowledges rights of custody that "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."  Convention, Article 3.

Ecuadorian law provides that a parent who is not awarded physical custody of the child still maintains his or her custody rights. Ecuadorian Code of Childhood and Adolescents ("ECCA") Art. 118.  Further, a non-custodial parent may maintain visitation rights when the other parent is awarded sole custody.  ECCA Art. 122.

Also, regardless of the custodial arrangement between the parents, under Ecuadorian law, both parents must consent before a Judge or Notary Public before their child can travel outside the country.  ECCA Arts. 109 and 110.  It is a violation of Ecuadorian law for one parent to retain the child in a foreign country in such a manner that exceeds the scope of the consent given by the other parent or for one parent to otherwise impair the other parent's right to visitation.  ECCA Art. 77.

Here, the parties have stipulated that Vera Revelo had rights of custody under both Ecuadorian law and the Convention at the time of P.A.V.C.'s removal from Ecuador.  Petitioner and Respondent entered into a custody agreement which established physical custody rights in favor of Cañizalez Cedeño and visitation rights in favor of Vera Revelo.  [Trial Exhibit C].  There is no evidence of any further court

order or consent agreement changing this initial custody arrangement. Additionally, although Vera Revelo gave written consent before a Notary Public for P.A.V.C. to travel to Cancùn, Mexico, he did not give consent for her to travel to the United States. [Trial Exhibit D]. Therefore, the Court finds that Cañizalez Cedeño's removal of P.A.V.C. from Ecuador to the United States, without Vera Revelo's permission, was a violation of Vera Revelo's custody rights.

### iii. Petitioner was Exercising Custody Rights at Time of Removal

A party with "'valid custody rights to a child under the law of the country of the child's habitual residence,'" can lose their custody rights only if there is "'clear and unequivocal abandonment of the child.'" *Sealed Appellant*, 395 F.3d at 345 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996). The court should not consider whether the party was exercising their custody rights "well or badly" as that pertains to the merits of a custody determination, which is "'beyond the subject matter jurisdiction of federal courts.'" *Id*.

Vera Revelo was exercising his custody rights at the time of removal by acting on his rights of visitation set out in his agreement with Respondent. Vera Revelo's substantiated testimony that he cared for P.A.V.C. on a daily basis, providing both physical and monetary care for her, is alone sufficient to show that he was exercising his custody rights. Additionally, Vera Revelo affirmatively exercised his *ne exeat* rights of custody when he consented before a Notary Public for P.A.V.C. to travel with Cañizalez Cedeño to Cancùn, Mexico, in August of 2021. There is no evidence that Vera Revelo, in any way, neglected his relationship with P.A.V.C. while she was in

13

Ecuador. The Court therefore finds that Vera Revelo was exercising his rights of custody at the time of P.A.V.C.'s removal from Ecuador.

### b. Affirmative Defense

The narrow exceptions provided in the Convention include five affirmative defenses that can be raised by the respondent. Convention, Articles 12, 13, and 20. In this case, Cañizalez Cedeño asserts the affirmative defense of "grave risk of harm" to the child, pursuant to Article 13 of the Convention. This defense applies in a situation where there is "a grave risk that return [of the child to his or her home country] would expose the child to physical harm or otherwise place the child in an intolerable situation." Convention, Article 13. The party asserting this defense must prove that a risk of harm exists by clear and convincing evidence and provides direct evidence that such risk is not merely serious, but grave. Hague International Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01. The law is clear that the grave risk of harm exception should be "interpreted narrowly," and it must be shown that there is a "probability that the harm will materialize." *Simcox v. Simcox*, 511 F.3d 594, 604 (6th Cir. 2007) (citing *Friedrich II*, 78 F.3d at 1064); *Ermini v. Vittori*, 758 F.3d 153, 164 (2d Cir. 2014) (quoting *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013)).

Return to a home country where money is in short supply or where education and other opportunities are more limited is not considered a grave risk of harm under the Convention. 51 FR 10494-01. Much more is required to find a grave risk, such as returning a child to "a zone of war, famine, disease" or "serious abuse or neglect."

14

*Vasquez v. Colores*, 648 F. 3d 648, 650 (8th Cir. 2011). Evidence of domestic violence may constitute a grave risk of harm "when the respondent shows by clear and convincing evidence a 'sustained pattern of physical abuse and/or a propensity for violent abuse.'" *Ermini*, 758 F. 3d at 164 (quoting *Souratgar*, 720 F.3d at 104). Abuse will amount to a grave risk of harm when the "petitioning parent had actually abused, threatened to abuse, or inspired fear in the [child] in question." *Souratgar*, 720 F.3d at 105. On the other hand, "sporadic or isolated incidents of physical discipline directed at the child, or some limited incidents aimed at persons other than the child, even if witnessed by the child, have not been found to constitute a grave risk." *Souratgar*, 720 F.3d at 104.

Here, Respondent urges the Court to find a grave risk to P.A.V.C. based on testimony regarding Petitioner's aggressive nature and propensity to drink in excess. Limited evidence was presented that Vera Revelo would drink excessively on occasion and would drive his vehicle while intoxicated. However, aside from one incident described by Respondent wherein Petitioner was visibly aggressive and angry during a road rage incident, each of the described incidents involved relatively minor domestic altercations between Cañizalez Cedeño and Vera Revelo. Likewise, although there was testimony of alcohol abuse by Petitioner, the weight of the evidence did not substantiate that he regularly or consistently abused alcohol.

Having considered the witnesses' testimony and argument of counsel, the Court finds that Respondent has not proven by clear and convincing evidence that there is a grave risk of harm to P.A.V.C. should she be returned to Ecuador.

15

Importantly, there is no evidence of any abuse, neglect, or violence either towards or in the presence of P.A.V.C. by Petitioner. As such, even if the Court were to find the Respondent's evidence wholly credible, without more it is insufficient to show by clear and convincing evidence that returning P.A.V.C. to Ecuador would constitute a grave risk of harm to her well-being. As such, there is no affirmative defense that prevents the operation of the Convention to return P.A.V.C. to Ecuador.

### V.     Fees and Costs

Finally, Vera Revelo seeks costs and legal fees. [Doc. 1]. ICARA provides that when a court orders that a child be returned to the petitioner, it is appropriate to "order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). In this case, Cañizalez Cedeño "bears the burden of showing that an award of legal fees, expenses, and costs would be 'clearly inappropriate.'" 22 U.S.C. § 9007(b)(3) and *Joya v. Gonzalez,* 2020 WL 1181846 at * 9 (E.D. La. March 12, 2020) (quoting *Soonhee Kim v. Ferdinand*, 287 F. Supp. 3d 607, 631 (E.D. La. Feb. 6, 2018)). The Court has determined that P.A.V.C. must be returned to Ecuador and has granted Vera Revelo's Petition. The Court will consider post-hearing briefs on the issue of attorney's fees and costs, which are to be filed within 14 days of this Order.

## Conclusion

The Supreme Court has ruled that if "a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must 'order the return of the child forthwith,' unless certain exceptions apply." *Abbott*, 130 S.Ct. at 1989 (citing Convention, Articles 4 and 12). Without any applicable exceptions,

IT IS HEREBY ORDERED that Vera Revelo's Petition for P.A.V.C.'s return to Ecuador is GRANTED, and P.A.V.C. shall be returned to Ecuador within twenty (20) days of the date of this Order. The parties are advised that this deadline will not be extended without mutual agreement.

IT IS FURTHER ORDERED that the parties shall promptly and diligently coordinate, in good faith, P.A.V.C.'s return to Ecuador. Within five (5) days of the date of this Order or two (2) days prior to P.A.V.C.'s planned return, whichever is earlier, the parties shall file a joint report informing the Court of the exact method and timing of P.A.V.C.'s planned transportation to Ecuador. As soon as possible, and not later than three (3) days after P.A.V.C.'s return to Ecuador, the parties will file a notice with the Court advising that P.A.V.C. has been safely returned to Ecuador. The Court will retain jurisdiction over this matter until P.A.V.C. is returned to Ecuador. Upon P.A.V.C.'s re-patriation to Ecuador, any further issues regarding the custody or care of P.A.V.C. are appropriately within the jurisdiction and province of the Ecuadorian judicial system.

IT IS FURTHER ORDERED that the United States Department of Homeland Security and the United States Department of State shall within two (2) business days, produce to the Court all documents necessary for P.A.V.C.'s return to Ecuador. This Order shall be served immediately on the United States Attorney for the Western District of Louisiana on behalf of the United States Department of Homeland Security and the United States Department of State.

IT IS FURTHER ORDERED that Cañizalez Cedeño is prohibited from removing P.A.V.C. from the Western District of Louisiana except to effect P.A.V.C's return to Ecuador. If Cañizalez Cedeño or any other person violates this Order, sanctions may be issued, and the United States Marshals Service will be authorized to take custody of P.A.V.C.

THUS, DONE AND SIGNED in Lafayette, Louisiana, on this 2nd day of September 2022.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE